UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| Arnold Parson Jr., | ) | Civil Action No.: 4:17-cv-00708-RBH |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| Darren Miles, Supervisor Judy Barker, Officer Jack McCaskill, Officer Mitchell McCaskill, Officer Charlie Watson, Officer Dewayne Rogers, Officer Jeff Gause, Officer Samantha Jackson, Officer Jonathan Edwards, Officer Robert Page, Officer Michael Latu, Officer Dale Sylvester, Officer Tracey Causey, and Officer Greg Pike, | ) | |
| Defendants. | ) | |

Plaintiff Arnold Parson Jr., proceeding pro se, filed this action pursuant to 42 U.S.C. § 1983 alleging, among other claims, that he was handcuffed in an excessively tight manner. The matter is now before the Court for consideration of Defendants' objections to the Report and Recommendation ("R & R") of United States Magistrate Judge Kaymani D. West, who recommends denying their motion for summary judgment.[1]

**Legal Standards**

**I.    Review of the R & R**

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court must conduct a

---

[1] The Magistrate Judge issued the R & R in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 (D.S.C.).

de novo review of those portions of the R & R to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983).

## II. Summary Judgment

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Reyazuddin v. Montgomery Cty., Md.*, 789 F.3d 407, 413 (4th Cir. 2015); *see* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party, *Reyazuddin*, 789 F.3d at 413, but the Court "cannot weigh the evidence or make credibility

2

determinations." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015).

Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). "A dispute of material fact is 'genuine' if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party." *Seastrunk v. United States*, 25 F. Supp. 3d 812, 814 (D.S.C. 2014). A fact is "material" if proof of its existence or nonexistence would affect disposition of the case under the applicable law. *Anderson*, 477 U.S. at 248.

At the summary judgment stage, "the moving party must demonstrate the absence of a genuine issue of material fact. Once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show that there is a genuine issue for trial." *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992) (internal citation omitted). Summary judgment is not warranted unless, "from the totality of the evidence, including pleadings, depositions, answers to interrogatories, and affidavits, the [C]ourt believes no genuine issue of material fact exists for trial and the moving party is entitled to judgment as a matter of law." *Whiteman v. Chesapeake Appalachia, L.L.C.*, 729 F.3d 381, 385 (4th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

**Facts**

Plaintiff filed this § 1983 action alleging his constitutional rights were violated when Marion County law enforcement executed a state-court writ of assistance and forcibly removed him from foreclosed property by arresting him. Plaintiff's sole remaining claim is his § 1983 excessive force claim relating to his allegedly excessively tight handcuffing during his arrest; this claim is pending

3

against the fourteen above-captioned Defendants in their individual capacities.[2] *See* ECF No. 161 (verified third amended complaint).

The evidence shows Defendants—who are agents/employees of the Marion County Sheriff's Department—went to Plaintiff's residence in Mullins, South Carolina, on the morning of November 2, 2015, to execute the writ of assistance and eject him from the premises. The parties have provided video footage from the scene (recorded by patrol vehicle and body cameras). *See* ECF Nos. 50, 78, 104, 213, & 219.

The videos depict multiple police vehicles arriving at a mobile home and surrounding it. Armed officers approach the front of the house, and one officer knocks on the front door. Plaintiff can be heard inside asking, "Who is it?"; the officer replies, "Sheriff's Office," and tells him to open the door; and Plaintiff says he is putting on clothes. Plaintiff then exits the front door with both arms raised and stands on the porch while holding a cell phone in one hand and a cigarette in another. He is barefoot and dressed in a T-shirt and shorts. Plaintiff states, "I don't know what's going on," and after an officer informs him he is being evicted from the premises, Plaintiff says that there is an appeal on file and that he has sent notices to everyone. Defendant Darren Miles[3] approaches and informs Plaintiff, "You have this instance only to leave this residence on your own free will or you will be arrested." Plaintiff states

---

[2] The Court previously concluded the *Rooker-Feldman* doctrine barred Plaintiff's other claims. *See* ECF Nos. 114 & 159 (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923)). The Court also dismissed Plaintiff's official capacity claims against Defendants (who are sheriff's deputies) based on Eleventh Amendment immunity. *See* ECF No. 197.

[3] In their responses to Plaintiff's interrogatories, Defendants state: "Defendant Darren Miles lawfully and properly informed Plaintiff that he was under arrest. Sgt. Jack Lawton McCaskill lawfully and properly placed handcuffs on Plaintiff on November 2, 2015. Officer Jonathan Edwards lawfully and properly transported Plaintiff to the Marion County Detention Center." ECF No. 211-2 at pp. 3, 14–15. In his response to Defendants' objections, Plaintiff identifies Defendants Darren Miles, Jack McCaskill, Jonathan Edwards, and Dale Sylvester. *See* ECF No. 218 at pp. 3–4, 12–13 n.5. Thus, the Court is able to identify Defendants Darren Miles, Jack McCaskill, Jonathan Edwards, and Dale Sylvester on the videos.

he will leave if he can get his clothes, and after not being allowed to do so, Plaintiff says, "Well, then, you do have to arrest me," and walks down the stairs. Defendant Miles then says, "Arrest him." Defendant Jack McCaskill[4] immediately handcuffs Plaintiff behind his back, and Plaintiff is placed in the back seat of a patrol vehicle. Before being put into the vehicle, Plaintiff says, "Hey, you're violating my rights going in that home," repeatedly yells, "Breach of the peace" and "Help," and states, "I'm in fear for my life."

Approximately three minutes later, Defendants Jack McCaskill and Jonathan Edwards remove Plaintiff from the vehicle, place him in the back seat of another patrol vehicle, and secure the seatbelt. Plaintiff is then transported to jail by Defendants Edwards and Dale Sylvester.

During the ride to jail, which lasts approximately fifteen minutes, Plaintiff is still handcuffed with his hands behind his back. Soon after being placed in the back seat, he moves his left hand to his left hip while his right hand remains behind his back. He frequently moves around on the seat by leaning forward and adjusting his arms, opens and closes his left hand, bows his head and shakes several times, and makes the following statements:

- "Sir, I can't feel the circulation in my hands. I'm a diabetic with high blood pressure, sir. Losing circulation in my hands. My hands feel numb."

- "Sir, I'm a diabetic with high blood pressure. This thing is cutting off my circulation. And I've been diagnosed with COPD."

Plaintiff says, "Sir," several other times. Neither Defendant Edwards nor Defendant Sylvester responds to Plaintiff's statements, and he remains handcuffed until arriving at the jail.

---

4 Because there is another defendant with the last name "McCaskill" (Defendant Mitchell McCaskill), the Court uses Jack McCaskill's full name throughout this Order.

5

In addition to the video evidence, Plaintiff avers in his verified complaint[5] that the "cuffs were so tight sharp pains ran from his hand to his shoulder causing him to shake" and that during the ride to jail he stated "'the cuffs were extremely tight.'" ECF No. 161 at ¶¶ 56, 57. Plaintiff further avers that on November 6, 2015 (four days after his arrest), he went to Georgetown Memorial Hospital because he was still in pain and "could barely move his right index finger." *Id.* at ¶ 69. He states that his right wrist was X-rayed and that his right hand was swollen from the index finger to the wrist. *Id.* at ¶¶ 69–70. Plaintiff claims that doctors told him there was possible nerve damage and an "MRI was needed for more detail," and that doctors prescribed pain medication. *Id.* at ¶ 70. He also avers his right wrist still bears "the scar of the handcuffs." *Id.* at ¶ 69. In an affidavit attached to his response in opposition to Defendants' motion for summary judgment, Plaintiff asserts that he was diagnosed with a sprained right wrist and possible carpel tunnel syndrome and that doctors provided a splint for his right wrist, two pain medications, and one anti-inflammatory medication. ECF No. 211-3 at ¶¶ 26–27. Finally, Plaintiff has submitted hospital medical records showing that his "primary diagnosis" was a "right wrist sprain" and "possible carpel tunnel syndrome" and that he was prescribed Anaprox, Prednisone, and Norco. ECF No. 211-1 at p. 4.

Defendants have submitted an affidavit from Defendant Darren Miles, who avers he arrested Plaintiff on charges of trespassing and breach of the peace. ECF No. 207-2 at ¶ 7. Defendant Miles

---

[5] Plaintiff's verified complaint serves as an opposing affidavit for summary judgment purposes. *See Carter v. Fleming*, 879 F.3d 132, 141 n.8 (4th Cir. 2018) ("'[A] verified complaint is the equivalent of an opposing affidavit for summary judgment purposes, when the allegations contained therein are based on personal knowledge.'" (alteration in original) (quoting *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991))). The Court is mindful of its duty to liberally construe Plaintiff's pro se filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (recognizing "[a] document filed *pro se* is to be liberally construed" (internal quotation marks omitted)). *But see United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012) ("Although courts must liberally construe the claims of *pro se* litigants, the special judicial solicitude with which a district court should view pro se filings does not transform the court into an advocate." (internal citations, quotation marks, ellipsis, and brackets omitted)).

asserts that before executing the writ of assistance "he had previously identified the Plaintiff as a potentially armed and dangerous 'Sovereign Citizen.'" *Id.* at ¶ 11. Defendant Miles contends that Plaintiff's handcuffs were never excessively tight or otherwise improperly utilized, and that Plaintiff's conduct following his initial arrest did not indicate he had suffered any injury. *Id.* at ¶¶ 8, 12. Defendants have also submitted diagnostic imaging results from a November 6, 2015 exam of Plaintiff's right wrist; these records show an "unremarkable exam" with "normal bony alignment and mineralization," "well[-]maintained" joint spaces, "[n]o abnormal sclerotic or lytic lesions," and "[n]o fracture." ECF No. 207-3.

## Discussion

The Magistrate Judge recommends denying Defendants' motion for summary judgment because (1) there is a question of fact as to whether they used excessive force in handcuffing Plaintiff too tightly; (2) they are not entitled to qualified immunity; (3) they have presented insufficient evidence on the issue of supervisory liability; (4) there is evidence from which a jury could conclude the placement of handcuffs on Plaintiff caused his injuries; and (5) Plaintiff has demonstrated a genuine issue of material fact on the issue of bystander liability. *See* ECF No. 214 at pp. 6–16. Defendants have filed objections to the Magistrate Judge's R & R, and Plaintiff has filed a response to Defendants' objections. *See* ECF Nos. 217, 218, & 219.

**I.    Objections Regarding Merits of Excessive Force Claim**

Defendants' first four objections relate to the merits of Plaintiff's excessive force claim. Defendants contend the Magistrate Judge erred in concluding (1) that a genuine issue of material fact exists as to whether the force utilized to arrest Plaintiff was excessive, (2) that Plaintiff suffered an objective and/or significant injury, (3) that a genuine issue of material fact exists as to whether

7

Defendants proximately caused Plaintiff's alleged injuries, and (4) that summary judgment should be denied on Plaintiff's bystander liability claim. *See* ECF No. 217 at pp. 1–10.

### A. Applicable Law

"The Fourth Amendment prohibits law enforcement officers from using excessive or unreasonable force in the course of making an arrest or otherwise seizing a person." *Betton v. Belue*, 942 F.3d 184, 191 (4th Cir. 2019) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). The Court must apply an "objective reasonableness" standard in determining whether an officer has used excessive force when seizing a free citizen. *E.W. by & through T.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018). This objective inquiry is based on the totality of the circumstances and requires an examination of the officer's actions in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation—subjective motives, intent, and/or propensities are irrelevant. *Id.* The Court "must give careful attention to the facts and circumstances of each particular case, including three factors in particular: [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Smith v. Ray*, 781 F.3d 95, 101 (4th Cir. 2015) (internal quotation marks omitted) ("*Graham* factors").[6] "The extent of the plaintiff's injury is also a relevant consideration." *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003).

"Given the universal acceptance of handcuffing as an appropriate safety measure incident to arrest, [the Fourth Circuit] ha[s] previously stated that 'a standard procedure such as handcuffing would

---

[6] The *Graham* factors "'offer[] little guidance in tight handcuffing cases because police officers almost always may use handcuffs in the course of a lawful arrest, regardless of the severity of the crime, the dangerousness of the suspect, or any attempts at flight—*Graham*'s three factors.'" *Dolgos*, 884 F.3d at 194 n.6 (Shedd, J., concurring in judgment) (quoting *Fisher v. City of Las Cruces*, 584 F.3d 888, 902 n.1 (10th Cir. 2009) (Gorsuch, J., concurring)).

rarely constitute excessive force where the officers were justified in effecting the underlying arrest.'" *Dolgos*, 884 F.3d at 193 (Shedd, J., concurring in judgment) (quoting *Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002)); *see also Carter v. Morris*, 164 F.3d 215, 219 n.3 (4th Cir. 1999) (holding an arrestee's claim "that her handcuffs were too tight" was "insubstantial" because she offered "minimal evidence" to support it).

Since the *Brown* decision in 2002, the Fourth Circuit "ha[s] not since elaborated on the type of circumstance that would constitute the rare exception where an excessive force handcuffing claim might be permissible." *Dolgos*, 884 F.3d at 193 (Shedd, J., concurring in judgment). However, in Judge Shedd's *Dolgos* concurrence, he surveyed federal caselaw and observed:

> [T]he prevailing federal rule appears to be that an arrestee may pursue a Fourth Amendment excessive force claim based on the use of handcuffs only in very limited circumstances, **such as when the handcuffing <u>causes physical injury</u>. That type of circumstance would likely qualify as the rare instance we recognized in *Brown* where handcuffing a lawful custodial arrestee may be unreasonable.**

*Id.* at 195 (emphases added).[7] Judge Shedd noted that a court "'evaluat[ing] an excessive force claim based solely on tight handcuffing'" may consider "'whether: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the plaintiff's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists.'" *Id.* at 194 (quoting *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 74 (E.D.N.Y.

---

[7] *See also Stutzman v. Krenik*, 350 F. Supp. 3d 366, 382 (D. Md. 2018) ("In the context of an arrest, the Fourth Circuit has never held that using handcuffs is per se reasonable. *Dolgos*, 884 F.3d at 180. A police officer can violate a person's Fourth Amendment rights by using excessive force during handcuffing. *Id.* at 185. In particular, courts have held that handcuffing in an excessively tight manner so as to cause injury can constitute excessive force."); *see, e.g.*, *McCall v. Williams*, 59 F. Supp. 2d 556, 561 (D.S.C. 1999) (finding an officer "used excessive force in handcuffing Plaintiff too tightly" and explaining "this is not a case in which Plaintiff simply complained that the handcuffs were too tight; instead, Plaintiff has medical evidence demonstrating that he has a '10% impairment of his RUE as a result' of the handcuffs being too tight"). In *McCall*, Judge Norton "specifically note[d] that [his] ruling in this case does not mean that every time a suspect complains that the handcuffs are too tight, a constitutional violation has occurred. Instead, a determination of whether a constitutional violation has occurred will depend upon the facts and circumstances of each case." 59 F. Supp. 2d at 561 & n.3.

2015)).

With this law in mind, the Court will consider Defendants' objections to the R & R.

**B.     Analysis**

At the outset, the Court emphasizes the issue is *not* the officers' right to arrest Plaintiff or to handcuff him as part of the arrest process. *See Brown*, 278 F.3d at 369 (recognizing handcuffing is a standard arrest procedure). Instead, the issue is whether excessive force was used in handcuffing Plaintiff in an allegedly *excessively tight manner* without adjusting/loosening the handcuffs despite his complaints.

The Court agrees with the Magistrate Judge that the three *Graham* factors weigh in Plaintiff's favor. The first and third *Graham* factors clearly favor Plaintiff because the crimes were minor (trespassing and breach of the peace)[8] and he did not actively resist arrest. Regarding the second *Graham* factor, Defendant Miles claims he had *previously* identified Plaintiff as "sovereign citizen," but Plaintiff *at the scene* exited his house unarmed with his hands raised after an officer knocked on the door. The evidence does not indicate Plaintiff posed an immediate threat to the safety of the officers. *See Graham*, 490 U.S. at 396 (emphasizing "standard of reasonableness at the moment"); *Brown*, 278 F.3d at 369 ("[T]he reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective.").

Viewing the evidence in the light most favorable to Plaintiff, there are genuine issues of material fact regarding (1) whether Defendant Jack McCaskill handcuffed Plaintiff in an excessively tight manner and (2) whether Defendants Jonathan Edwards and Dale Sylvester acted unreasonably in not

---

[8]     *See Yates v. Terry*, 817 F.3d 877, 885 (4th Cir. 2016) ("When the offense committed is a minor one, we have found that the first *Graham* factor weighs in plaintiff's favor." (cleaned up)).

loosening or readjusting Plaintiff's handcuffs despite his verbal statements and physical movements in the patrol vehicle on the way to jail. Notably, Defendants have not provided any affidavit or testimony from Defendant Jack McCaskill (who actually handcuffed Plaintiff), Defendant Edwards (who was driving the patrol vehicle when Plaintiff complained), or Defendant Sylvester (who rode in the front passenger seat of the patrol vehicle driven by Defendant Edwards). Defendants have only submitted an affidavit from Defendant Darren Miles, who ordered Plaintiff's arrest but did not handcuff or transport him to jail.

Moreover, there is a genuine issue of material fact regarding whether Plaintiff was physically injured by the allegedly excessively tight handcuffing. Plaintiff's verified complaint describes his pain during and after the handcuffing, and it alleges his right wrist is scarred from the handcuffs. He has also submitted hospital records showing he was diagnosed with a sprained right wrist and possible carpel tunnel syndrome, given a splint, and prescribed pain and anti-inflammatory medications. Meanwhile, Defendants have submitted the results of Plaintiff's "unremarkable exam" from his diagnostic imaging. These issues of fact preclude granting summary judgment outright on Plaintiff's excessive force claim.[9]

---

[9] In their objection concerning proximate causation, Defendants argue that Plaintiff has not presented any objective medical evidence to support the alleged injuries to his wrist, that he has not identified a treating physician who will testify on his behalf, and that he has not identified a medical expert who will testify that the alleged excessive force proximately caused any significant injury. ECF No. 217 at pp. 7–8.

"[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012); *see Kane v. Lewis*, 604 F. App'x 229, 234 (4th Cir. 2015) ("A plaintiff asserting a constitutional tort under § 1983 must therefore satisfy the familiar element of proximate causation."). Thus, "[t]o prevail on an excessive force claim, a plaintiff must also establish causation between the force alleged and the plaintiff's injury." *Krell v. Queen Anne's Cty.*, 2019 WL 4888634, at *3 (D. Md. Oct. 3, 2019). Because "[d]amages awarded under § 1983 for violations of constitutional rights are ordinarily governed by common law tort principles," *Kane*, 604 F. App'x at 234, the Court may look to South Carolina state law regarding proximate causation. *See Watson v. Adams*, No. 4:12-cv-03436-BHH, 2015 WL 1486869, at *5 (D.S.C. Mar. 31, 2015).

Here, Defendants have not cited any cases supporting the proposition that expert testimony is required to prove proximate causation in a § 1983 excessive force case, and there is no "blanket rule" requiring expert testimony in excessive force cases. *Kopf v. Skyrm*, 993 F.2d 374, 378 (4th Cir. 1993). Moreover, "[e]xpert testimony is not required to prove proximate cause if the common knowledge or experience of a layperson is extensive enough." *O'Leary-Payne v. R.R. Hilton Head, II*, 638 S.E.2d 96, 101 (S.C. Ct. App. 2006) (citing *Bramlette v.*

***However***, the Court disagrees with the Magistrate Judge's implicit determination that *all* Defendants are liable. *See generally Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section." (internal quotation marks omitted)). Having thoroughly reviewed the evidence, the Court concludes Plaintiff's excessive force claim is viable only as to Defendants Jack McCaskill, Edwards, and Sylvester at the summary judgment stage. Defendant Jack McCaskill may be personally liable because he handcuffed Plaintiff. *See Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) ("To establish personal liability under § 1983, . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights." (internal quotation marks and bracket omitted)). Defendants Edwards and Sylvester may be liable as bystanders because they were present in the patrol vehicle when Plaintiff complained the handcuffs were cutting off circulation in his hands. *See Brooks v. Johnson*, 924 F.3d 104, 110 (4th Cir. 2019) ("[B]ystander liability . . . permits relief against an officer who (1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act." (internal quotation marks and citation omitted)). As for supervisory liability, however, Plaintiff fails to provide sufficient evidence on any of

---

*Charter-Med.-Columbia*, 393 S.E.2d 914, 916 (S.C. 1990)). Plaintiff himself can testify that his right wrist was sprained and is still scarred from the handcuffs, and such evidence precludes summary judgment on the issue of proximate causation, which must be decided by a jury. *See, e.g.*, *Kopf*, 993 F.2d at 379 ("A club and the damage it can cause when it strikes a person's head are easily understood by most laymen."); *Scales v. Markham*, 2014 WL 6893517, at *4 (W.D. Va. Dec. 5, 2014) (holding summary judgment was not warranted on the premise that the plaintiff "ha[d] not timely identified a medical expert who will testify that [the officer]'s use of force was, in fact, the cause of the subdural hematoma"); *see generally Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 638 S.E.2d 650, 662 (S.C. 2006) (stating "[t]he question of proximate cause ordinarily is one of fact for the jury"). However, Plaintiff may have a more difficult time proving—without expert testimony—that his "possible" carpel tunnel syndrome resulted from application of the handcuffs. He may also encounter hearsay problems, as he cannot testify about what doctors told him. Defendants' arguments are more properly the subject of a motion in limine before trial, and should Defendants file such a motion, the Court will further address their arguments concerning proximate causation and/or expert testimony.

the three elements required for such a claim. *See Randall v. Prince George's Cty.*, 302 F.3d 188, 206 (4th Cir. 2002) ("[S]upervisory liability may attach under § 1983 if a plaintiff can establish three elements . . . : (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." (internal quotation marks omitted)). There is not a genuine issue of material fact as to whether any other Defendant was personally involved in the deprivation of Plaintiff's right to be free from excessive force regarding the handcuffs, and therefore the Court will dismiss those eleven other Defendants.[10]

In sum, there are genuine issues of material fact precluding summary judgment as to Plaintiff's excessive force claim against Defendants Jack McCaskill, Edwards, and Sylvester. The Court will grant summary judgment as to the eleven other Defendants and dismiss them from this action.

## II. Objection Relating to Qualified Immunity

In their final objection, Defendants argue the Magistrate Judge erred in concluding they should not be entitled to qualified immunity. Defs.' Objs at pp. 10–12. Specifically, they argue "the alleged

---

[10] As noted above, Defendants state in their responses to Plaintiff's interrogatories that "Defendant Darren Miles lawfully and properly informed Plaintiff that he was under arrest." ECF No. 211-2 at p. 3. There is no evidence indicating Defendant Miles knew of the allegedly excessively tight handcuffs or directed such handcuffing. Again, Plaintiff complained about the handcuffs being too tight while he was riding in the patrol vehicle, and Defendant Miles was not present. *See, e.g.*, *Wright*, 766 F.2d at 850 ("Collins must have had personal knowledge of and involvement in the alleged deprivation of appellant's rights in order to be liable."); *Sindram v. Saxton*, 955 F.2d 42, 1992 WL 29297, at *1 n.* (4th Cir. 1992) (unpublished table decision) (affirming grant of summary judgment because the plaintiff "failed to show any involvement of the named Defendants" in the "incidents of excessive use of force").

13

constitutional right to be free from excessively tight or forceful handcuffing was undeniably not clearly established at the time of the Defendants' alleged misconduct." *Id.* at p. 10. Given the Court's conclusion that Plaintiff's excessive force claim is viable only as to Defendants Jack McCaskill, Edwards, and Sylvester the Court need only address Defendants' argument to the extent it concerns these three defendants.

"To overcome the qualified immunity defense at the summary judgment stage, [1] the plaintiff must have shown facts that make out a violation of a constitutional right, and [2] the right at issue must have been 'clearly established' at the time of the defendant's alleged misconduct." *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). "The burden of establishing the affirmative defense of qualified immunity rests on the party seeking to invoke it." *Betton*, 942 F.3d at 190.

Initially, the Court notes Defendants Jack McCaskill, Edwards, and Sylvester are not entitled to summary judgment on the first prong of the qualified immunity analysis because there are genuine issues of material fact regarding whether they violated Plaintiff's Fourth Amendment right to be free from excessive force. *See Vathekan v. Prince George's Cty.*, 154 F.3d 173, 180 (4th Cir. 1998) ("[S]ummary judgment on qualified immunity grounds is improper as long as there remains any material factual dispute regarding the actual conduct of the defendants.").

Thus, the Court is left to consider the second prong of the qualified immunity analysis: whether the officers' conduct violated a constitutional right that was clearly established at the time the conduct occurred. "A right is clearly established when the contours of the right are sufficiently clear to ensure that a reasonable official would have understood that the alleged conduct was unlawful." *Betton*, 942 F.3d at 193 (internal quotation marks omitted). "Decisions by the Supreme Court, this Circuit, *and the*

*highest court of South Carolina* are relevant on the issue of notice to [an official] concerning clearly established constitutional rights." *Id.* (emphasis added); *see Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540–41 (4th Cir. 2017) (recognizing "Supreme Court of South Carolina decisions" are "cases of controlling authority" for purposes of the "clearly established inquiry").

This Court has previously ruled that the South Carolina Supreme Court clearly established in a 1998 published decision that an arrestee—who is charged with minor crimes, not actively resisting arrest, and not posing an immediate safety threat to officers—has the right to be free from excessively tight or forceful handcuffing. *See* ECF No. 197 at pp. 6–8 (citing *Quesinberry v. Rouppasong*, 503 S.E.2d 717, 718–19, 721–22 (S.C. 1998)). Accordingly, Defendants Jack McCaskill, Edwards, and Sylvester are not entitled to qualified immunity.[11]

## Conclusion

For the foregoing reasons, the Court **ADOPTS IN PART AND REJECTS IN PART** the R & R [ECF No. 214], **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment [ECF No. 207], and **DISMISSES** *with prejudice* Defendants Darren Miles, Supervisor Judy

---

[11] Defendants cite and rely on two cases from the Eastern District of Virginia: *Deavers v. Vasquez*, 57 F. Supp. 3d 599 (E.D. Va. 2014), and *Cunningham v. Ruffin*, 2016 WL 6396015 (E.D. Va. Oct. 26, 2016). Both cases are from Virginia (not South Carolina) and deal with "unduly tight or forceful handcuffing alone, ***absent significant physical injury***." *Deavers*, 57 F. Supp. 3d at 609 (emphasis added); *see Cunningham*, 2016 WL 6396015, at *5 ("*Deavers*, and the cases it cites, share the holding that a lack of evidence of significant physical harm undermines a claim for excessive force based on the manner of cuffing."). The Court also questions the "significant physical injury" requirement of these cases because, in the Fourth Amendment context, "the severity of injury resulting from the force used has always been but one 'consideration in determining whether force was excessive.'" *Smith v. Murphy*, 634 F. App'x 914, 917 (4th Cir. 2015) (quoting *Jones v. Buchanan*, 325 F.3d 520, 530 (4th Cir. 2003)). Moreover, another judge in the Eastern District of Virginia has contrarily ruled, "A survey of excessive force case law reveals that other appellate courts have determined that unduly tight handcuffing constitutes excessive force. Although these cases do not constitute binding precedent, the Court finds the appellate court consensus significant enough to show a clearly established right." *Geba v. Norris*, 2016 WL 8730898, at *7 (E.D. Va. Apr. 4, 2016) (internal citations omitted), *R & R adopted by* 2:14-cv-00612-RBS, at ECF No. 42 (E.D. Va. May 13, 2016). In any event, as explained above, the South Carolina Supreme Court's 1998 decision in *Quesinberry* clearly established the law applicable to Plaintiff's handcuffing-related excessive force claim.

15

Barker, Officer Mitchell McCaskill, Officer Charlie Watson, Officer Dewayne Rogers, Officer Jeff Gause, Officer Samantha Jackson, Officer Robert Page, Officer Michael Latu, Officer Tracey Causey, and Officer Greg Pike.  **This case remains pending as to Plaintiff's § 1983 excessive force claim asserted against Defendants Jack McCaskill, Jonathan Edwards, and Dale Sylvester in their individual capacities.**

Furthermore, defense counsel and the pro se Plaintiff should contact each other and mediate this case within thirty days of the date of this Order, as the Court will be scheduling this case for trial in an upcoming term.  The parties should advise the Court of the mediation date once it is scheduled.

**IT IS SO ORDERED.**

Florence, South Carolina  
January 6, 2020

s/ R. Bryan Harwell  
R. Bryan Harwell  
Chief United States District Judge